IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LORETTO G. GRAEFEN, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-CV-1410 |
| ) | |
| KANELAND COMMUNITY UNIT SCHOOL ) | |
| DISTRICT #302 ) | |
| ) | |
|    Defendant. ) | |

**COMPLAINT AT LAW**

Now comes the Plaintiff, Loretto G. Graefen, through her attorney, and for her Complaint against the Defendant, Kaneland Community School District, states the following:

***JURISDICTION***

1. The jurisdiction of this Court for these causes of action is invoked by 28 U.S.C. §§1331 and 1343.

2. The civil rights statutes pled in this case are the American with Disabilities Act of 1990, §2 *et seq.*, 42 U.S.C.A. § 12101 *et seq*.

3. The Plaintiff, Loretto Graefen ("Graefen"), is a female of age 77 who resides in Elburn, Kane County, Illinois.

4. Kaneland Community Unit School District #302 ("District #302") is an Illinois School District in southwestern Kane County.

5. Loretto Graefen filed a charge of discrimination with the Illinois Department of Human

Rights on November 30, 2011, attached hereto as **Exhibit 1**.

6. Ms. Graefen was then given a notice of right to sue by the U.S. Department of Justice on December 6, 2012. A copy of the notice of right to sue is attached hereto as **Exhibit 2**.

7. This action is being filed within the required 90 days.

## *VENUE*

8. Venue in this district is proper under 28 U.S.C. §1391(a)(1), (2) and (3), and under the civil rights statute set out above.

## *BACKGROUND*

9. Graefen was hired as a bus driver by District #302 in or about August 1998.

10. In 2003, Graefen began having issues with her knees.

11. In 2005, Graefen received a left knee replacement.

12. In 2008, Graefen received a right knee replacement.

13. The resulting knee replacement required Graefen to use a cane to walk but did not affect her ability to drive a bus or obtain a driver's permit from the Illinois Secretary of State.

14. At all times, Graefen performed her duties as a bus driver admirably and effectively.

15. In 2008, District #302 hired James Ogle ("Ogle") as the director of transportation for District #302.

16. On May 2010, Ogle began an "audit" of the Plaintiff by observing her on bus routes.

17. Ogle, who was aware of the Plaintiff's knee problems, communicated to her during an "audit" that she was not to bring her supportive cane onto her bus as the cane could be used as a weapon.

18. Graefen communicated Ogle's cane comments to the assistant superintendent for District #302, Dr. Julianne Fuchs, who stated in a letter of August 31, 2010 that she would get legal clarification on the matter, but ultimately never followed up with Graefen.

19. Soon after Ogle's comments concerning the Graefen's cane, the District #302 Board of Education, on the prompting of Ogle, passed a modified bus driver handbook on June 1, 2010.

20. The revised handbook contained a section labeled Section 1, paragraph E--entitled "Physical Examinations" which was amended to include the provision: "To further ensure the safety of students, school bus drivers are required to undergo a physical performance/dexterity test and pass after the physical examination before receiving an offer of employment and once each year during employment. See Board Policy 5.30." At no time was Graefen given Board Policy 5.30 nor was the policy distributed district-wide.

21. After the passage of the handbook, Graefen communicated her concern to Dr. Fuchs in August 2010 that she was being targeted with the passage of physicality requirements which Ogle knew Grafen would not be able to pass. At that time, the modified handbook was not being disseminated in written format yet the physical requirements were being communicated by Ogle orally during employee meetings with no specificity as to what tests were to be employed.

22. In October 14, 2010, Graefen filed an Equal Employment Opportunity Commission ("EEOC") charge #846-2010-81956 as her concerns grew that she was being targeted for adverse employment activities because of her disability. A copy of the charge is attached hereto as **Exhibit 3.**

23. Immediately prior to the filing of the EEOC charge, Graefen again communicated her concerns about new policies which were being communicated orally during meetings to the bus drivers to Dr. Julianne Fuchs, assistant superintendent of the Defendant. Graefen also communicated to Fuchs she was looking to file an EEOC charge on the basis of disability and retaliation because:

    a. Ogle had informed Graefen not to use her cane on the bus, despite being aware of her knee disability;

    b. The Defendant was not enforcing handicapped parking regulations despite being aware of Graefen's knee condition; and

    c. The Defendant was unilaterally passing employment terms and conditions specific to her disability, and the terms and conditions offered no accommodation to her disability.

24. After this communication with Dr. Fuchs, Fuchs informed Graefen that an EEOC complaint would cost the school district money and discouraged her from filing a complaint.

25. After filing the initial EEOC charge, James Ogle, the District #302 director of transportation, contacted co-workers of Graefen including bus mechanics and told them not to accommodate her in checking bus fluids or bus fueling.

26. Graefen was given a right to sue letter on the initial charge on November 24, 2010. A copy of the right to sue letter is attached hereto as **Exhibit 4**. The ninety (90) day statute of limitations ran for the initial charge on February 22, 2011.

27. Immediately after the expiration of the statute of limitations in February 2011, James

       Ogle contacted Graefen on March 4, 2011 and informed her she would need to take a dexterity test for her continued employment as a bus driver for District #302 on March 7, 2011.

28. At that time, Ogle communicated orally to Graefen what the dexterity test consisted of, including an emergency exit drill which required Graefen jumping from high distances.

29. Graefen practiced for the drill, but discovered that performing the drill would exacerbate and aggravate her disability.

30. Without the use of her cane, Graefen was unable to perform the first part of the test on March 7, 2011 which required Graefen to go up and down the bus steps, three times, in thirty (30) seconds.

31. When Graefen performed the test in forty-four (44) seconds without the aid of my cane, James Ogle communicated to her that she had failed and "was through" with her employment.

32. After taking the test, Graefen informed James Ogle and then Dr. Fuchs that she would not retest because of concerns of injury to her knees.

33. On the recommendation of Dr. Fuchs and James Ogle, an employee dismissal closed hearing was held for Loretto Graefen on March 14, 2011 by the District 302 Board of Education and pursuant to Board decision, the Defendant discharged Graefen from her employment.

34. A letter followed from the Board of Education session in where it stated that Graefen, refused to take the dexterity test and went on to communicated child safety standards that had never been communicated to Graefen before. A copy of the termination letter is

attached hereto as **Exhibit 5**. At no time was Graefen's disability or medical condition discussed in the termination letter and Graefen never refused to take the test.

35. Graeffen was not given an actual copy of the standards and tests for dexterity until she received her termination letter of March 14, 2011 from the Defendant.

36. At all times in 2010 and prior to 2010, Graefen had passed the physical fitness requirements for her job.

37. After termination, current employees of the Defendant communicated to Graefen that the dexterity test was applied sporadically and not consistently among bus drivers of the Defendant.

### Count I - Violation of the American's with Disabilities Act

38. At all times, including and up to her discharge, Loretto Graefen had knee replacements which required her to use a cane.

39. At all times, despite her chronic knee problems, Loretto Graefen was able to perform the essential functions of her job as a bus driver.

40. The Defendant was aware of Loretto Graefen's disability at all times.

41. The Defendant intentionally targeted Graefen's disability by passing and modifying legislation targeting her condition.

42. The Defendant intentionally targeted Graefen and intentionally refused to accommodate Graefen's disability by requiring her not to use her cane while operating a bus without legitimate reason.

43. At all times the Defendant, with the use of her cane, was a licensed Illinois bus driver and

performed her job satisfactorily.

44. At no time did the Defendant offer to accommodate Graefen in fact, the Defendant employees, including James Ogle, encouraged employees to not accommodate Graefen.

45. As a result of Graefen's disability, Graefen was terminated by the Defendant without cause.

Wherefore, due to the violations of the American with Disabilities Act, Plaintiff Graefen asks for the following relief;

    A. Judgment be entered that the Defendant intentionally and willfully discriminated against Graefen on the basis of her disability in violation of the ADA;

    B. Graefen be paid back pay for loss wages, benefits, and prejudgment interest thereon;

    C. Punitive damages for such intentional violation of the Act;

    D. Costs and attorneys fees for maintaining this action; and

    E. Compensatory damages and any other relief as may be appropriate.

### Count II - Retaliation in Violation of American's with Disabilities Act

1-35. Graefen re-states and incorporates by reference allegations of 1-35. of the Complaint as allegations 1-35. of Count II.

36. The Defendant discouraged Graefen from filing an ADA based EEOC charge and retaliated against her for filing the EEOC charge by terminating her employment, and any reason given by the Defendant for her termination was a mere pretext. She was engaging in protected activity in considering and filing her EEOC claim #846-2010-81956.

37. The actions of the Defendant were pre-meditated and intentional in that the Defendant fired Graefen two weeks after her cause of action lapsed on the initial EEOC charge. Wherefore, due to the violations of the American with Disabilities Act, Plaintiff asks for the following relief;

  A. Defendant re-employ Graefen;

  B. Back pay to March 2011 for the loss of the job;

  C. Costs and attorneys fees for maintaining this action; and

  D. Any other relief as may be appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY**

/s/ Steven T. Mann
Loretto Graefen
by her Attorney Steven T. Mann

Steven T. Mann (#6291177)
Law Office of Steven T. Mann
32114 Village Green Blvd.
Warrenville, IL 60555
(815) 975-0317
(630) 604-0043 (Fax)
smann@stevenmannlaw.com

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | ☐ FEPA<br>☒ EEOC | 440-2012-00621 |

Illinois Department Of Human Rights _____ and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Loretto G. Graefen | (630) 365-0744 | 03-26-1935 |

Street Address: 609 Banbury Ave, Elburn, IL 60119

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| KANELAND COMMUNITY UNIT SCHOOL DISTRICT #302 | 500 or More | (630) 365-5111 |

Street Address: 47 W 326 Keslinger Road, Maple Park, IL 60151

RECEIVED EEOC
NOV 30 2011
CHICAGO DISTRICT OFFICE

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: _____ Latest: 03-15-2011
☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s))*:

I began my employment with Respondent in or about August 1998. My most recent position was School Bus Driver. Respondent was aware of my disability. During my employment, I have been subjected to different terms and conditions of employment than non-disabled employees, including, but not limited to, being forced to take a physical at an earlier date. I filed the EEOC charge, #846-2010-81956. Subsequently, I have been subjected to different terms and conditions of employment, including, but not limited to, more scrutiny, performing fitness to duty test, and discharged.

I believe I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

11/28/2011    /s/ Loretto Graefen
Date               Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

EXHIBIT 1

# ADDENDUM TO THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION INTAKE QUESTIONNAIRE FOR LORETTO GRAEFEN

**6. Why do you believe these actions were discriminatory? Please attach additional pages if needed.**

My disability is in the form of a knee replacements which require me to use a cane. I began having issues with my knees in 2003. I received a left knee replacement in 2005 and a right knee replacement in 2008. I am currently age 76 and have successfully performed the duties of a bus driver since 1998. The disability does not prevent me from driving. At all times, I have had a legitimate bus driver permit issued by the State of Illinois.

I began complaining of discrimination to the EEOC and the Kaneland Community Unit School District #302 as early as 2010. Actions concerning discrimination leading to my termination were perpetrated by James Ogle who was hired as the director of transportation of Kaneland Community Unit School District #302 and other administrators at the school district who supported the discriminatory actions of James Ogle and helped to support a district-wide policy which was passed specifically to target my disability leading to my eventual termination. The administrators included Dr. Julianne Fuchs, assistant superintendent and members of the Kaneland School Board.

Sometime during the summer of 2010, James Ogle who was aware of my knee problems and was aware that I used a cane communicated to me directly and in person that I was not to bring my supportive cane onto the bus. Following soon thereafter, the school district passed on the prompting of James Ogle a modified bus driver handbook on June 1, 2010 and another modified handbook on June 1, 2011. The handbook of June 1, 2010 in Section 1, paragraph E entitled "Physical Examinations" was amended to include the following provision: "To further ensure the safety of students, school bus drivers are required to undergo a physical performance/dexterity test and pass after the physical examination before receiving an offer of employment and once each year during employment. See Board Policy 5.30." I could not find Board Policy 5.30. The modification essentially added the requirement of a performance/dexterity test. At all times I had successfully passed the physical fitness requirement. A distribution of the bus driver handbooks by the school never occurred. Modifications to the handbooks and employment requirements were never communicated.

The handbook of June 1, 2011 contained the same provision however a section N was added to the handbook. Section N was labeled "TRANSPORTATION DEPARTMENT PROCEDURE FOR TAKING THE DEXTERITY TEST." A paragraph in the section attempts to further clarify the reasoning for the dexterity test. "The dexterity test evaluates the drivers ability to enter and exit the bus effectively, to operate the brakes and throttle effectively, to manually open and close the bus door effectively, to use a secondary exit on the bus and to move freely throughout the bus as they might be required to do in an emergency, to potentially evacuate or move an incapacitated student in an emergency, and to evaluate the drivers ability to drive the vehicle safely while simultaneously operating the vehicles controls on both sides of the steering wheel." The

result of not passing the test was also set forth for the first time in the handbook of June 1, 2011: "Should the driver fail the test the second time, he/she will be suspended without pay and a recommendation for termination will be sent to the Board of Education." These requirements actually amended the requirements set forth by the Illinois Secretary of State as found in 625 ILCS 5/6-106.1(a). In that section, the state requires that in order to receive a permit one must pass a written test on bus safety, demonstrate ability to exercise reasonable care in the operation of school buses and demonstrate physical fitness to operate school buses. At all times I met these requirements.

      What exactly the dexterity test would entail was not communicated initially by the School District. In fact, I never learned of the actual standards until I was given a copy of these standards attached to my termination letter of March 14, 2011 from District #302. When the standards were revealed to me post-termination, it became clear to me that the new policy and the standards had been passed specifically to target me in regards to my disability and age. It is plausible that the standards had been drafted specifically in preparation for my termination hearing. The test for example included a provision called "standard #5" where I was required to jump off of the emergency exit of a bus. This was a drop of between 3 and 4 feet. The test also contained a provision called "standard #6" which was a weight drag of 100 pounds for a distance of 30 feet. In "standard #5" in caps and underlined is the statement "<u>DO NOT LET DRIVERS JUMP FROM THE EMERGENCY EXIT</u>". In addition it states, "If an employee requests, a foam rubber gym mat, not thicker than four inches, may be placed on the ground behind the bus." Never was this option communication to me. The standard also failed to reflect that because of my height it was impossible for me NOT to jump due to the vertical distance between the emergency exit and the ground. One such driver, Jana Capello, when taking the standard #5 portion of the dexterity test prior to myself actually hurt herself.

      Another surprise attachment to my termination letter was a note from Jon Christofersen, MD of Dreyer Medical Clinic that I was able to participate in Physical Agility Testing. I had gone to the Dreyer Medical Clinic in August 2010 and had met with William Johnston, MD. Dr. Johnston made it clear to me at that time that he would allow me to participate with the stipulation that I was not allowed nor should be required to jump or drop from any distance due to the condition of my knees. It was also not clear to me at the meeting with Dr. Johnston or the entire Dreyer Medical Clinic staff whether they were aware of the true nature of the Physical Agility Test or even if the Physical Agility test was the same as the dexterity test mentioned in the bus driver handbook..

      My concerns about the passage of the new provisions culminated in my filing of a charge for discrimination with the Illinois Department of Human Rights on October 14, 2010 in EEOC charge #846-2010-81956. Prior to filing the EEOC charge, Dr. Fuchs informed me that if I filed an EEOC complaint that it was going to cost the school district money. <u>I received a right to sue on November 24, 2010. I calculated the statute of limitations to run on February 22, 2011. I was terminated on March 15, 2011</u>. After filing the EEOC charge, immediately the school district and Mr. Ogle contacted my co-workers including bus mechanics and told them not to accommodate me perform my job successfully. In one such example, I solicited help from a bus mechanic to ask about checking the fluids on the bus and fueling the bus correctly as a new system had been set up

on the gas pumps. The mechanic, Bob, after helping me was immediately reprimanded by the school district.

Immediately upon the termination of the 90-day statute of limitations, James Ogle began to contact myself and other bus drivers concerning the dexterity test. When it became clear to me what the test consisted of, I practiced for it in February 2011. While practicing it became clear to me that there was no way to perform the emergency exit drill without hurting myself and aggravating my ongoing disability. I received a call on March 4, 2011 from James Ogle informing me that I was to take the dexterity test on March 7, 2011. When I took the test on March 7, 2011 I was told I was not allowed to use my cane. I was unable to complete the first section of the test which was going up and down the bus steps three times in 30 seconds. Upon performing the test in 44 seconds, James Ogle communicated to me in an unprofessional and personal manner that I had "failed" and I "was through". Although, according to bus handbook, Section N, I was allowed to retake the test, I realized that I was being set up to fail and that I would be unable to perform to emergency exit drill due to the jump. I elected, due to the harassing conditions imposed upon me, to inform James Ogle and Julianne Fuchs, that I would not resign but I was not going to injure myself taking the dexterity test. On March 14, 2011, pursuant to an employee dismissal hearing upon the recommendation of Dr. Julie-Ann Fuchs and James Ogle, I was terminated.

In September 2011, I was informed by Bob Cappello, a bus mechanic with District 302 that the dexterity test was being administered sporadically and inconsistently among the bus drivers, if at all. This information was also confirmed by Terry and Mike Gillis who are two bus drivers for District 302. Both Terry and Mike had not been required to take the dexterity test during the spring or summer of 2011.

**7. What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title?**

The reason I was informed by James Ogle that I was not to bring a cane on the bus was because he felt it could somehow be used as a weapon by the students. The reasons for the passage of the dexterity test have been stated in the response to 6. above. In regards to my use of a cane on a bus, in a letter of August 31, 2010, Dr. Fuchs informed me that she would get clarification regarding this rule and practice from the State of Illinois. No further clarification was provided. Ultimately, she conceded, I would be allowed to use the cane even though I was not allowed to use it as an aid in the dexterity test. In a letter of March 10, 2011, Dr. Fuchs referred to the reason for the dexterity test was one to insure that each bus driver has the physical strength and dexterity to perform the necessary functions to ensure the safety of the children during an emergency situation. She referred in the letter March 10th to my "inability" to take the test. She never referred to my disability. In my termination letter of March 14, 2011, I was told after a closed session by the District #302 school board that I had "refused to complete the physical dexterity test." The letter goes on to state that "in the event of an emergency, bus drivers are expected to use the rear exit to evacuate the children. The driver would exit first and then help each child exit, as well as direct them to the safest location." This standard as set forth in the letter was never communicated either by the State of Illinois or District 302 as the appropriate approach in the event of an emergency. In

fact, the bus driver handbook at Section N had only stated that the purpose was to show the use of a secondary exit and to move freely through the bus as a bus driver *might* be required to do. In many instances, the children will exit the emergency exit and the bus driver, exiting the front exit will assist children down the emergency exit. It was clear that this justification for the dexterity test was made up by James Ogle and the school board hearing and never refers to a statewide or national standard.

**13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)**

Dr. Beth Larson - 2001 Wiesbrook Rd., Wheaton, IL 60187, PH 630-614-4000. My primary care physician who Is aware and can speak to my disability.

Dr. David Morawski - 2525 Kaneville Rd., Geneva, IL, PH 630-584-1400. Surgeon who performed both of my knee replacement surgeries.

Mary Jefcik - 920 Lakeview Dr., Rochelle 61068, PH 815-561-8018. Ms. Jefcik was hurt when trying to perform certain aspects of the dexterity test.



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

---

CERTIFIED MAIL
2015 6739

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

December 4, 2012

Ms. Loretto G. Graefen
609 Banbury Ave.
Elburn, IL  60119

Re:  EEOC Charge Against Kaneland Community Unit School District #302
     No. 440201200621

Dear Ms. Graefen:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under:
      Title I of the Americans with Disabilities Act of 1990,
      42 U.S.C. 12111, et seq., and,
      Title V, Section 503 of the Act, 42 U.S.C. 12203.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

   The investigative file pertaining to your case is located in the EEOC Chicago District Office, Chicago, IL.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Thomas E. Perez
                                        Assistant Attorney General
                                        Civil Rights Division

                                   by   /s/ Karen L. Ferguson

                                        Karen L. Ferguson
                                        Supervisory Civil Rights Analyst
                                        Employment Litigation Section

cc:  Chicago District Office, EEOC
     Kaneland Community Unit School District #302



EXHIBIT 2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>[ ] FEPA<br>[X] EEOC | Agency(ies) Charge No(s):<br>846-2010-81956 |
|---|---|---|

Illinois Department Of Human Rights                    and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>Ms. Loretto Graefen | Home Phone (Incl. Area Code)<br>(630) 365-0744 | Date of Birth<br>03-26-1935 |
|---|---|---|

Street Address: 609 Banbury Ave, Elburn, IL 60119

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name<br>KANELAND COMMUNITY UNIT SCHOOL DIST 302 | No. Employees, Members<br>500 or More | Phone No. (Include Area Code)<br>(630) 365-5111 |
|---|---|---|

Street Address: 47 W. 326 Keslinger Rd, Maple Park, IL 60151

DISCRIMINATION BASED ON (Check appropriate box(es).)
[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: _____  Latest: 08-17-2010
[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent in or around August 1998. I have been employed as a Bus Driver. Respondent is aware of my disability. During my employment, I was subjected to different terms and conditions of employment, including, but not limited to, losing my parking space and not being allowed to take my cane on the bus. As well as being ordered to go for a physical for a dexterity test when the other drivers don't have to take the test until their renewal I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

is due. My renewal is due 02/2011.

RECEIVED
OCT 14 2010
CHICAGO DISTRICT

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

10/11/10    *Loretto Graefen*
Date        Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE

EXHIBIT 3

EEOC Form 161 (11/09)  **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Loretto Graefen
609 Banbury Avenue
Elburn, IL 60119

From: Chicago District Office
500 West Madison St
Suite 2000
Chicago, IL 60661

CERTIFIED MAIL 7010 1870 0001 8433 3264

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2010-81956 | Kara Mitchell, Investigator | (312) 353-8791 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

John P. Rowe, District Director

11/23/2010 (Date Mailed)

Enclosures(s)

cc: KANELAND COMMUNITY UNIT SCHOOL DISTRICT 302


EXHIBIT 4



# Kaneland Community School District #302
47W326 Keslinger Road
Maple Park, IL 60501
(630) 365-5111   Fax (630) 365-9428
http://www.kaneland.org

**Dr. Jeff Schuler**
**Superintendent of Schools**

---

March 15, 2011

Mrs. Loretto Graefen
609 Banbury Ave
Elburn, IL 60119

Dear Loretto,

The purpose of this letter is to notify you that the Board of Education did meet in closed session on Monday, March 14th. In executive session they heard the recommendation for termination of your employment from Kaneland School District. Following the hearing the Board of Education did vote to terminate your employment, effective immediately.

I spoke to the payroll department. You will receive two more paychecks from Kaneland School District. You will receive your regular payroll on March 15th. Barb Bradford will calculate additional monies owed to based on the number of days that you worked up to and including Monday, March 14th. With the final paycheck Barb will include a summary of the monies included on that check so that you are able to understand how we reconcile your payroll. Once you receive your final paycheck on March 30th, please contact Barb Bradford in payroll if you have any questions.

Sincerely,

Jeff Schuler

C:   Personnel File
     Barb Bradford, Payroll



EXHIBIT 5